**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RANDY O'KANE, on behalf of herself and a class of all others similarly situated, | Civil Action No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| JETBLUE AIRWAYS CORPORATION, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Randy O'Kane ("Plaintiff") individually on behalf of herself and all those similarly situated, brings this class action lawsuit against Defendant JetBlue Airways Corporation ("JetBlue" or "Defendant") based upon personal knowledge as to herself, the investigation of her counsel, and on information and belief as to all other matters.

## I.      INTRODUCTION

1.      This proposed class action concerns monetary damages that Plaintiff and consumers residing nationwide have suffered as a result of purchasing travel insurance through Defendant's website. As explained in more detail below, Defendant engages in a deceptive scheme to induce its customers to purchase travel-insurance policies, while concealing its own financial interest in policy sales.

2.      Specifically, Defendant encourages its customers to protect their trip with travel insurance provided by Allianz Global Assistance ("Allianz"), a third-party insurer that has partnered with JetBlue to offer travel insurance through JetBlue's website.  JetBlue does not disclose, however, that despite lacking a license to broker insurance policies, it has a financial interest in the travel insurance and receives an illegal kickback from the insurer in exchange for brokering the insurance sale.

3.     These activities have harmed Plaintiff and the proposed class, as Plaintiff and each member of the proposed class have suffered an out-of-pocket loss through the payment of undisclosed and illegal commission kickbacks. Plaintiff alleges that Defendant's website misled her into paying for the cost of that illegal kickback, and that Defendant is therefore liable for these damages, among other things.

4.     In light of the above, Plaintiff brings common law claims for unjust enrichment, fraudulent concealment, and for violations of New York's General Business Law §§ 349 and 350, as alleged herein.

## II.     PARTIES

5.     Plaintiff Randy O'Kane is a resident of Rockland County and citizen of the State of New York.  She purchased trip insurance purportedly sold by Allianz, through JetBlue's website at www.jetblue.com.  Specifically, in or around October 20, 2016, Plaintiff O'Kane purchased airline tickets for herself and two other individuals through JetBlue's website to travel between Westchester County, New York, and Fort Lauderdale, Florida, in January 2017.  At the same time, Plaintiff accepted JetBlue's web offer to purchase Allianz trip insurance, paying $84.00 for the insurance.  At no time during Plaintiff's purchase experience on JetBlue's website did JetBlue advise her that it receives commission profits from each trip-insurance policy sold on its website.  On October 20, 2016, Plaintiff received an email from the insurance provider attaching her policy.

6.     On February 4, 2015, Plaintiff also purchased airline tickets for herself and one other individual through JetBlue's website to travel between Westchester County, New York, and Fort Lauderdale, Florida, in March and April 2015.  At the same time, Plaintiff accepted JetBlue's web offer to purchase Allianz trip insurance, paying $55.92 for the insurance.  At no time during Plaintiff's purchase experience on JetBlue's website did JetBlue advise her that it

receives commission profits from each trip-insurance policy sold on its website.  On February 4, 2015, Plaintiff received an email from the insurance provider attaching her policy.

7.      Defendant JetBlue is a Delaware corporation with its principal place of business in Long Island City, New York. JetBlue is not licensed under any state laws to solicit, negotiate, transact, or effect contracts of insurance.

### III.     JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from at least one Defendant.

9.      This Court has personal jurisdiction because Plaintiff and Defendant reside in this state.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does business throughout this District, Plaintiff resides in this District, Plaintiff purchased the travel insurance through JetBlue in this District, and because certain acts giving rise to the claims at issue in this Complaint occurred in this District.

### IV.     FACTUAL ALLEGATIONS

**A.      JetBlue receives illegal kickbacks from the travel insurer that JetBlue promotes on its website.**

11.     Travel or trip insurance essentially covers any added costs or lost payments that an individual might incur while on a trip or planning a trip. For example, if a consumer is forced at the last minute to switch or cancel a flight, then travel insurance will cover flight-switching fees or—if necessary—the otherwise-lost cost of the flight.

12.     Almost every state in the nation requires insurance agents operating within their borders to be licensed, which allow states to ensure—among other things—that the agent is subject to regulation; that the agent helps bear the cost of that regulation; and that the agent is sufficiently qualified to sell a product as potentially complicated and significant as insurance. Consequently, almost every state in the country forbids unlicensed individuals and entities from acting as insurance brokers or receiving money for insurance brokering. This includes the State of New York. *See, e.g.*, N.Y. INS. LAW § 2102.

13.     Despite these prohibitions, transportation companies such as airlines, including Defendant, have come under fire recently for receiving undisclosed, illegal brokerage fees or commissions—i.e., kickbacks—from the travel insurance companies that they promote on their websites.  In August 2018, United States Senator Edward J. Markey released a report detailing this practice, which is illegal under state law.  In fact, the New York Attorney General's Office has issued an official opinion stating that an insurer may not pay any commission to transportation companies for the sale of travel insurance unless the transportation company is a licensed and appointed insurance agent or broker.[1]  The practice is also inequitable because travel insurance is typically only necessary, in the first place, because the airlines themselves have begun charging exorbitant switching and cancelation fees; the insurance that these airlines promote is often significantly inferior to the insurance that's available on the open market (i.e., it offers less coverage and presents significant obstacles to reimbursement); and travel insurance

---

[1] *See* General Counsel Opinion 4-23-2008 (#1), 2008 WL 2132848 (NY INS BUL) ("May an insurer pay an insurance commission to a cruise line or tour operator that is not a licensed and appointed insurance agent, or a licensed insurance broker? . . . No. An insurer may not pay an insurance commission to a cruise line or tour operator that is not either a licensed and appointed insurance agent, or a licensed insurance broker.").

kickbacks now constitute an illegal but significant "profit center" for "almost every major airline" in the country—one that's being unknowingly funded by consumers.[2]

14.     JetBlue engages in the type of unlicensed insurance brokering described in the Markey Report. Throughout the class period, JetBlue offered for sale and urged its passengers, via its website, to buy travel insurance provided by a third-party insurer, Allianz.[3]  If a passenger in fact opted for coverage, they would pay a certain sum to the insurer in exchange for the travel insurance. That sum, however, included an undisclosed fee that JetBlue would ultimately retain, in exchange for helping broker the insurance sale.  This is an illegal brokerage fee paid to JetBlue.

15.     JetBlue did not, however, disclose to consumers that it was receiving these kickbacks, and its website misled consumers into unknowingly funding its improper brokerage fees, as described in more detail, below.

        **B.      JetBlue misleads consumers into funding its illegal brokerage fees.**

16.     JetBlue is one of the largest airline carriers in the United States.  JetBlue flies to 102 destinations in North, Central, and South America, and operates approximately 1,000 flights daily.

17.     As part of its business, JetBlue sells tickets to customers through its website, www.jetblue.com.

18.     When a customer visits JetBlue's website, the site allows the customer to search their preferred destination and travel dates.

---

[2] *See* OFFICE OF SENATOR EDWARD J. MARKEY, FLYER BEWARE: IS TRAVEL INSURANCE WORTH IT? (2018), available at https://www.markey.senate.gov/imo/media/doc/Flyer%20 Beware%20Report.pdf (hereafter, the "Markey Report").

[3] More specifically, Allianz Global Assistance, Jefferson Insurance Company, and BCS Insurance Company.

19.     After the customer chooses their specific flight itinerary, JetBlue's website provides the customer with the price of that flight and then the customer is prompted to click "Continue".

20.     After the customer inserts their personal and contact information and selects their seats, the customer reaches the "Payment" page.  However, before the customer completes their purchase, JetBlue's website presents customers with the option to buy trip insurance through a third-party insurance provider.  Specifically, customers are presented with the below options:

**Add Travel Protection**

○ **Yes,** I want the flexibility to change my flight for covered reasons for a total of $43.31.  **(Highly Recommended)**

**All these benefits for a fraction of the ticket cost:**

- **More flexibility:** Reimburses up to 100% for covered trip cancellation and interruption
- **Luggage protection:** Benefits for loss, damage or theft of your personal belongings
- **Delay insurance:** Reimburses for eligible, unexpected meals, accommodations and baggage delay expenses
- **The help you need:** 24-hour emergency assistance and concierge services

"And of course — always get travel insurance." – *USA Today,* July 2017

**Review Period:** If you're not completely satisfied, you have 10 days (or more, depending on your state of residence) to request a refund, provided you haven't started your trip or initiated a claim. Premiums are non-refundable after this period.

○ No, **I choose not to protect** my $641.60 purchase and understand **I am responsible** for all cancellation fees and delay expenses.

👥 30,391 customers protected their trip in the last 7 days

Recommended, offered and sold by Allianz Global Assistance. Underwritten by Jefferson Insurance Company or BCS Insurance Company. Terms and exclusions (incl. for pre-existing conditions) apply. Plan details and disclosures.

21.      The option to choose the travel protection is followed by the conspicuous statement in blue font: "Highly Recommended".

22.     Customers are also given the option to click "No . . . I choose not to protect my [ticket price] purchase and understand **I am responsible** for all cancellation fees and delay expenses" (emphasis in original).

23.     At the bottom of the text box, in smaller font, is the statement "Recommended, offered and sold by Allianz Global Assistance.  Underwritten by Jefferson Insurance Company or BCS Insurance Company."

27.     If a customer elects to buy travel insurance for a flight, Allianz will send the customer an email containing a copy of the purchased insurance policy. Nowhere in that communication or accompanying insurance policy is there any reference to JetBlue receiving any payment in connection with the transaction.  In fact, in the Letter of Confirmation that Allianz sends individuals who purchase travel insurance through JetBlue's website, it states, "AGA Service Company is the licensed producer and administrator for this plan."

28.     JetBlue leaves the consumer with the false impression that the charge for trip insurance is a passthrough fee.  A passthrough fee is a fee that is passed on to another entity and for which JetBlue has no financial interest. The impression of JetBlue's representations and omissions to consumers is that, when consumers purchase a trip-insurance policy, the funds to cover the policy's cost go to an independent third-party insurance company, whom JetBlue falsely identifies as the company brokering the policy for sale to the consumer.

29.     Moreover, on JetBlue's website, JetBlue states, "JetBlue wants every trip to be the best it can be. That's why we've partnered with Allianz Global Assistance – a world leader in travel insurance and assistance services. Travel insurance from Allianz can provide coverage before and during your trip to help protect the investment you've made in your travel plans."[4] Accordingly, JetBlue is affirmatively representing that it is Allianz, not JetBlue, providing the trip insurance.

30.     JetBlue's marketing is intended to create the impression that the trip insurance is in the consumer's best interest.

27.     Further, by indicating that the travel insurance is "offered and sold" by Allianz, JetBlue's website misleadingly indicates—in the affirmative—that a consumer's travel insurance

---

[4] Travel Insurance, *available at* https://www.jetblue.com/customer-assurance/travel-insurance (last accessed 10/11/2019).

costs are passed through entirely to the third-party insurance company. In fact, JetBlue

represents, on its website, that refunds come directly from Allianz. Specifically, JetBlue states,

"Allianz Global Assistance will process a full refund of the premium within 10 days of purchase,

as long as you have not yet departed on your trip or filed a claim."[5]

      28.     However, in reality, and completely unbeknownst to its customers, JetBlue

illegally profits off of the sale of travel insurance, as JetBlue retains or ultimately receives for

itself a portion of the funds for every trip-insurance policy its consumers purchase on its website.

At no point during the transaction does JetBlue disclose that it receives a commission or

kickback every time a customer elects to purchase travel insurance, or that the consumers are

funding this kickback. JetBlue's website represents to the consumer that it is Allianz, not

JetBlue, who is recommending, offering, and selling, the travel insurance. At no point during the

class period did JetBlue disclose to Plaintiff, or any of the Class members, the true nature of its

relationship with Allianz or any other entity that is associated with the travel insurance offered

on JetBlue's website.

      29.     Despite the fact that state law generally prohibits the unlicensed sale of insurance,

including receipt of commissions on sales of insurance, JetBlue masks its own financial interest

in the purchase of the insurance by identifying Allianz as the producer and administrator of the

policies, failing to mention its own role as also acting as an insurance agent, and receiving

commissions.

---

[5] Travel Insurance, *available at* https://www.jetblue.com/customer-assurance/travel-insurance
(last accessed 10/11/2019).

**C.     As a result of JetBlue's illegal brokerage fees, Plaintiff and the proposed class were damaged.**

30.     Travel insurance is available on the open market that is less expensive than the insurance offered on JetBlue's website, and often provides superior or comparable coverage, in part because the open-market insurance does not include any illegal kickbacks to JetBlue. For example, JetBlue's insurance is nearly twice as expensive as comparable—if not superior—plans that are otherwise available to consumers. This discrepancy is attributable to the illegal commissions that JetBlue receives from its insurers.

31.     At no point did JetBlue inform Plaintiff that a portion of the trip insurance billed to her included an illegal kickback to JetBlue.

32.     Had Plaintiff been aware that a portion of the costs of the travel insurance was being used to fund an illegal kickback to JetBlue, she would not have paid for the travel insurance and/or would have paid less for travel insurance.

**D.     Plaintiff's travel-insurance-policy purchases were unrelated to JetBlue's prices, rates, or services.**

33.     JetBlue provides no services to its customer in connection with the sale of travel insurance on its website.

34.     The price of the travel insurance is a price offered or set by the insurer, not JetBlue.

35.      No contractual relationship is formed between the customer and JetBlue in connection with a customer's purchase of travel insurance on JetBlue's website.

36.     No bargained-for exchange takes place between the customer and JetBlue in connection with a customer's purchase of travel insurance on JetBlue's website.

37.     JetBlue does not compete with other airlines for insurance-brokerage services, which—in any event—it is prohibited from providing under state law.

## V.    CLASS-ACTION ALLEGATIONS

38.    Plaintiff brings this proposed class action on behalf of herself and on behalf of a separate state class – a Nationwide Class and a New York Class (together, "Classes") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), (b)(3), and (c)(4).

The Nationwide Class is initially defined as: All persons who purchased a travel-insurance policy on JetBlue's website in the United States within the applicable limitations period (the "Class Period").

The New York Class is initially defined as: All persons who purchased a travel-insurance policy on JetBlue's website in the State of New York within the applicable limitations period (the "Class Period").

39.    Excluded from the proposed Classes are: the Defendant; any entity in which the Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by the Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant; and judicial officers to whom this case is assigned and their immediate family members.

40.    Plaintiff reserves the right to re-define the Class definitions after conducting discovery.

41.    **Numerosity (Fed. R. Civ. P. 23(a)(1)).** Pursuant to Rule 23(a)(1), the Classes are so numerous that joinder of all members would be impracticable.  While the exact number of Class members has not yet been determined, Plaintiff believes that the Classes are comprised of millions of members geographically dispersed throughout the United States and in the State of New York. The Classes, however, are readily identifiable from information and records in the possession of Defendant and third parties and can be ascertained through appropriate investigation and discovery. Class members may be notified of the pendency of this action by

any appropriate methods approved by the Court, which may include by mail or email, internet postings, or by published notice.

42.     **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2); 23(b)(3)).** Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual members of the Classes.  Questions common to the Classes include, but are not limited to, the following:

a)   whether JetBlue engaged in the unlicensed practice of soliciting, negotiating, transacting, or effectuating contracts of insurance;

b)   whether JetBlue engaged in unlawful, unfair, or fraudulent acts and business practices by omitting its receipt or retention of kickbacks/commissions;

c)   whether the representations made about insurance premiums collected by JetBlue would lead a reasonable customer to believe it was a pass-through charge;

d)   whether JetBlue's omissions or misstatements relating to travel insurance would have been considered material by a reasonable consumer;

e)   whether JetBlue's omissions or misstatements regarding travel insurance resulted in the Classes being damaged;

f)   whether JetBlue receives undisclosed kickbacks, commissions, or fees from the sale of travel insurance; and

g)   whether JetBlue unlawfully enriched itself at the expense of the Class members.

43.     These common questions predominate over any questions solely affecting individual Class members.

44.     **Typicality (Fed. R. Civ. P. 23(a)(3)).**  Pursuant to Rule 23(a)(3), Plaintiff's claims are typical of the claims of the members of the Classes because of the similarity, uniformity, and common purpose of JetBlue's allegedly unlawful conduct. Like all Class

members, Plaintiff was damaged by paying money that JetBlue deceptively presented as a pass-through charge to an insurance company, when in fact JetBlue enriched itself in this process.

45.     **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)).**  Pursuant to Rule 23(a)(4), Plaintiff and her counsel will fairly and adequately protect the interests of the Classes. Plaintiff has no interest antagonistic to, or in conflict with, the Classes that she seeks to represent. Plaintiff has retained competent and capable attorneys with significant experience in complex and class-action litigation, including consumer class actions. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial and other resources to do so.

46.     **Superiority (Fed. R. Civ. P. 23(b)(3)).** Class-action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. There will be no significant difficulty in the management of this case as a class action.

47.     **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)).** In the alternative, this action may properly be maintained as a class action, because:

(a)      the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant; or

(b)      the prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)      Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

48.      **Issue Certification. Fed. R. Civ. P. 23(c)(4).** In the alternative, the common questions of fact and law are appropriate for issue certification on behalf of the proposed Classes.

## COUNT I

### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Nationwide and New York Classes)

49.      Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

50.      Plaintiff brings this claim for unjust enrichment on behalf of herself and the proposed Nationwide and New York Classes.

51.      Plaintiff and each Class member conferred a benefit on JetBlue by funding JetBlue's illegal kickbacks, which allowed JetBlue to enrich itself to the detriment of Plaintiff and the Class members.

52.    JetBlue appreciated, accepted, and retained this benefit, as it garnered substantial profits by virtue of the illegal kickbacks.

53.    Under the circumstances, it would be inequitable to allow JetBlue to retain this benefit, as it was obtained through deceptive representations and was otherwise illegal under state insurance laws.

54.    Because JetBlue's retention of the non-gratuitous benefits conferred on it by Plaintiff and the Class members is unjust and inequitable, JetBlue must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court.

## COUNT II

### DECEPTIVE ACTS OR PRACTICES, NEW YORK GEN. BUS. LAW § 349
(On Behalf of Plaintiff and the Nationwide and New York Classes)

55.    Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

56.    Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide and New York Classes.

57.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making omissions and misrepresentations regarding its retention of illegal brokerage fees, failure to indicate that a portion of Plaintiff's travel insurance costs would be illegally retained by or funneled to JetBlue, and misleadingly indicating that a consumer's travel insurance costs are passed through entirely to the third-party insurance company.

58.    The foregoing deceptive acts and practices were directed at consumers.

59.    Defendant's false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

60.     Defendant's false, misleading, and deceptive statements and representations of fact were material to an objectively reasonable consumer.  For example, a reasonable consumer would want to know that a portion of their travel insurance premiums were being illegally funneled to Defendant, and that information would factor into the consumer's decision to purchase or not to purchase travel insurance.

61.     Plaintiff and Class members purchased travel insurance products that were priced higher than they would have been but for the undisclosed kickbacks, i.e., Plaintiff and the Class members were overcharged for those products. Plaintiff and the Class members would not have paid for the travel insurance and/or would have paid less for travel insurance had they been aware that the overcharges would be illegally retained by JetBlue.  Accordingly, Plaintiff and Class members were injured because they paid money to JetBlue as a result of its unfair conduct.

62.     As a direct and proximate result of Defendant's unfair acts or practices, Plaintiff and Class members have been damaged in an amount to be proven at trial.

63.     Defendant engaged in such unlawful course of conduct with the intent to induce Plaintiff and the Class members into purchasing travel insurance and paying premiums above what they would otherwise pay or above what the policies are otherwise worth.

64.     Plaintiff and Class Members seek relief under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

## <u>COUNT III</u>

### FALSE ADVERTISING, NEW YORK GEN. BUS. LAW § 350
### (On Behalf of Plaintiff and the Nationwide and New York Classes)

65.     Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

66.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide and New York Classes.

67.     By the acts and conduct alleged herein, Defendant engaged in false or misleading advertising by making omissions and misrepresentations regarding its retention of illegal brokerage fees, failing to indicate that a portion of Plaintiff's travel insurance costs would be illegally retained by or funneled to JetBlue, and misleadingly indicating that a consumer's travel insurance costs are passed through entirely to the third-party insurance company.

68.     The foregoing false or misleading advertisements were directed at consumers.

69.     Defendant's false or misleading advertisements were material to an objectively reasonable consumer.  For example, a reasonable consumer would want to know that a portion of their travel insurance premiums were being illegally funneled to Defendant, and that information would factor into the consumer's decision to purchase or not to purchase travel insurance.

70.     Defendant's false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

71.     Plaintiff and Class members purchased travel insurance products that were priced higher than they would have been but for the undisclosed kickbacks, i.e., Plaintiff and the Class members were overcharged for those products. Plaintiff and the Class members would not have paid for the travel insurance and/or would have paid less for travel insurance had they been aware that the overcharges would be illegally retained by JetBlue.  Accordingly, Plaintiff and the Class members were injured because they paid money to JetBlue as a result of its unfair conduct.

72.     As a direct and proximate result of Defendant's false or misleading advertisements, Plaintiff and Class members have been damaged in an amount to be proven at trial.

73.     Defendant engaged in such unlawful course of conduct with the intent to induce Plaintiff and the Class members into purchasing travel insurance and paying premiums above what they would otherwise pay or above what the policies are otherwise worth.

74.     Plaintiff and Class members seek relief under N.Y. Gen. Bus. Law § 350-e, including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

## COUNT IV

### FRAUDULENT CONCEALMENT
### (On Behalf of Plaintiff and the Nationwide and New York Classes)

66.     Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

67.     Plaintiff brings a claim for fraudulent concealment on behalf of herself and the proposed Nationwide and New York Classes.

68.     Plaintiff purchased travel insurance plans via Defendant's website and was exposed to the language that was present on the website.

69.     As noted above, Defendant's website omitted material facts and made material misstatements regarding Defendant's receipt of illegal insurance-brokerage commissions.

70.     Plaintiff relied on Defendant's omissions and misstatements in deciding to purchase travel insurance, or in deciding to purchase travel insurance at the price she paid for it.

71.     But for Defendant's omissions and misstatements regarding its kickbacks, Plaintiff would not have purchased insurance from Allianz, and/or would not have been paid as much as she did for the travel insurance.

72.     Defendant knowingly made the omissions and misstatement identified above with the intent to defraud Plaintiff.

73.     Defendant had superior knowledge regarding the omission at issue, i.e., Defendant, and not Plaintiff, was in a better position to know that it was receiving illegal kickbacks from insurance companies.

74.     Defendant had a duty to disclose this material information because Plaintiff entered into a contract with Defendant for the purchase of flights, and in turn, JetBlue left Plaintiff and Class members with the false impression that the charge for trip insurance was a passthrough fee.

75.     Consumers could not readily know that Defendant was receiving undisclosed, illegal insurance commissions, in part because Defendant actively withheld this information from consumers.

76.     Defendant, who actively withheld knowledge of its illegal kickbacks from consumers, was aware that consumers would be relying on these omissions and misstatements in agreeing to fund Defendant's illegal kickbacks.

77.     As a consequence of Defendant's fraudulent concealment, Plaintiff was injured in an amount equal to the cost of the insurance; to the difference between the insurance and the cost of comparable insurance; or to the cost of the kickback that JetBlue received.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and members of the Classes, prays for relief as follows:

A.     An order certifying the proposed Classes and designating Plaintiff as the named representative of the Classes and designating their attorneys as Class Counsel;

B.     All declaratory relief available;

C.     An award to Plaintiff and the Classes of compensatory, exemplary, and statutory damages, in an amount to be proven at trial;

D.       An order enjoining Defendant from further engaging in the misconduct alleged

herein;

E.       For restitution of all money or property wrongfully obtained by Defendant;

F.       For disgorgement, for the benefit of the Classes, all or part of the ill-gotten

profits;

G.       An award of attorneys' fees and costs as allowed by law;

H.       An award of pre-judgment and post-judgment interest, as provided by law;

I.        Leave to amend the Complaint to conform to the evidence produced at trial; and

J.        Such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all claims so triable.


Dated: October 18, 2019                          **STULL, STULL & BRODY**

                                                *Melissa R. Emert*
                                                _____
                                                Melissa R. Emert
                                                6 East 45th St.-5th Floor
                                                New York, NY 10017
                                                Telephone: 954-341-5561
                                                Facsimile: 954-341-5531
                                                Email: memert@ssbny.com

                                                **LEVI & KORSINSKY, LLP**
                                                Rosemary M. Rivas*
                                                44 Montgomery Street, Suite 650
                                                San Francisco, CA 94104
                                                Telephone: 415-373-1671
                                                Facsimile: 415-484-1294
                                                Email: rrivas@zlk.com

**GLANCY PRONGAY & MURRAY**
Marc L. Godino*
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-201-9150
Facsimile: 310-432-1495
Email: mgodino@glancylaw.com

**TAUS, CEBULASH & LANDAU, LLP**
Kevin Landau
80 Maiden Lane, Suite 1204
New York, New York 10038
Telephone: (212) 931-0704
Email: klandau@tcllaw.com

**GUSTAFSON GLUEK PLLC**
Daniel C. Hedlund*
120 South 6th St.
Minneapolis, MN 55401
Telephone: 612-333-8844
Facsimile: 612-339-6622
Email: dhedlund@gustafsongluek.com

*Counsel for Plaintiff Randy O'Kane*

*\*Pro Hac Vice Application Forthcoming*